IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN DOWNS, Assistant to the Orem City Manager;<br><br>Petitioner,<br><br>v.<br><br>BRYAN THOMPSON, Utah County Clerk/Auditor, the BOARD OF COUNTY COMMISSIONERS OF UTAH COUNTY, and UTAH COUNTY, a political subdivision of the State of Utah,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER CERTIFYING QUESTIONS TO THE UTAH SUPREME COURT**<br><br>Case No. 2:17-cv-00330<br><br>District Judge Dale A. Kimball |

Pursuant to Rule 41 of the Utah Rules of Appellate Procedure, the United States District Court for the District of Utah requests that the Utah Supreme Court answer the following questions of law:

1) Does a Utah district court have jurisdiction to review the Utah County Board of Commissioners' decision upholding a fine levied pursuant to Utah Code Section 20A-11-1205?

2) Does the term "ballot proposition" as used in Utah Code Section 20A-11-1205(1) include a referendum during the period of time before its sponsors have obtained the requisite number of signatures on the referendum petition?

3) Does the term "ballot proposition" as used in Utah Code Section 20A-11-1205(1) include a referendum during the signature gathering phase if the challenged local government action is later found to be administrative in nature and therefore not subject to a referendum?

1

The issues are controlling in this matter and "there appears to be no controlling Utah law" because the Petitioner is the first person to be fined for violating Utah Code Section 20A-11-1205(1). Utah R. App. P. 41. The court acknowledges that the Utah Supreme Court may reformulate these questions. *See In re W. Side Prop. Assocs.*, 13 P.3d 168, 170-71 (Utah 2000).

## FACTUAL BACKGROUND

Pursuant to Utah Code Section 20A-11-1205(1)(b), "a person may not send an email using the email of a public entity to advocate for or against a ballot proposition." "The applicable election officer shall impose a civil fine against a person who violates [the statute] up to $250 for a first violation." *Id*.

Petitioner Steven Downs resides in Orem, Utah and is employed as the assistant to the Orem City Manager. Downs has been employed in this capacity since March 3, 2014. On April 26, 2016, the Orem City Council passed a resolution authorizing the Orem Mayor to sign two agreements (Orem City Resolution R2016-0012). The first agreement was a lease agreement with the Utah Transit Authority (UTA) in which the city agreed to lease a strip of 400 West Street approximately 10 feet wide and 205 feet long for a dedicated Bus Rapid Transit (BRT) lane. The second agreement was an inter-local agreement with Provo, UDOT, UTA, and Mountainland Association of Governments (MAG) in which the parties created a project management committee and an executive committee which were authorized to make decisions regarding the BRT project.

On April 27, 2016, several individuals filed a Referendum Application with the Orem City Recorder. The Referendum Application stated that the decision being challenged was Orem City Resolution R2016-0012.

On May 16, 2016, Downs sent an email in which he invited Orem delegates to attend a meeting in opposition to the BRT referendum and specifically invited them to attend a meeting which had been scheduled to provide positive information regarding the BRT project.

On May 31, 2016, Respondent Utah County Clerk/Auditor Bryan Thompson notified Downs that residents filed a complaint with the Utah Lt. Governor's Office alleging that Orem City personnel used a city email to influence the outcome of the referendum petition. The letter from Thompson further informed Downs that his email violated the Political Activities of Public Entities Act because it was sent from an Orem City email account and advocated against the current referendum process associated with the proposed BRT project. The letter informed Downs that Thompson had assessed a $250 fine against him for a first infraction under Utah Code Section 20A-11-1205(2)(a).

On July 21, 2016, the Orem City Recorder denied the Referendum because it concerned an administrative matter that was not subject to a referendum. The denial included a letter from the Orem City Attorney stating that the referendum was not referable because the Resolution passed by the City was not a law, but an administrative act and administrative acts are not referable.

On June 28, 2016, the Orem Deputy Attorney Steven C. Earl sent a letter to Thompson in which he requested a hearing to appeal the fine assessed against Steven Downs. On September 6, 2016, the Board of Utah County Commissioners established an official appeal process for any person upon whom the Utah County Clerk/Auditor imposed a fine pursuant to Utah Code §20A-11-1205. On December 13, 2016, the Commissioners held a hearing to determine the validity of the civil fine assessed against Steven Downs under the Political Activities of Public Entities Act.

Orem Deputy City Attorney Steve Earl submitted a detailed brief of legal arguments and authorities to the Board of Utah County Commissioners prior to the hearing. Steve Earl also made arguments against the fine at the hearing.

Following a closed meeting, the Board of Utah County Commissioners reconvened its regular meeting and announced its decision to uphold the fine assessed against Downs. Two Commissioners voted to uphold the fine while one voted against upholding the fine. Specifically, the Commissioners found that Downs' email advocated against the BRT Referendum because it contained only information from opponents of the BRT referendum, invited recipients to attend a meeting held by the opponents of the ballot proposition, distributed a link to the anti-Petition "knowbeforeyousign.com" website with the

heading "PROVO CITIZEN GROUP ADVOCATES FOR BRT," did not contain any information summarizing arguments in favor of the BRT project, and did not grant equal access to proponents of the BRT Referendum.

On November 7, 2016, the Referendum Petitioners filed a petition in the Fourth Judicial District for Utah County, Civil No. 160401698, seeking an order compelling the Orem City Recorder to accept the Referendum Petition for the November 2017 municipal general election. On May 2, 2017, the Utah State trial court in a suit between entities not party to this suit, noting that the question presented "a difficult and close case," concluded that the BRT Referendum was administrative in nature and therefore not properly subject to the referendum process.

## LEGAL BACKGROUND

The parties allege that this is the first time a fine has been imposed pursuant to Utah Code Section 20A-11-1205.

**1) Does a Utah district court have jurisdiction to review the Utah County Board of Commissioners' decision upholding a fine levied pursuant to Utah Code Section 20A-11-1205?**

At the hearing on the parties' motions for summary judgment, the Respondents argued that a Utah District Court does not have jurisdiction to review the Utah County Commissioners' decision upholding the fine levied pursuant to Utah Code Section 20A-11-1205.

Downs relied on Utah Code § 20A-1-404 as a basis for jurisdiction, however, that statute is limited to disputes involving election officers, candidates, party representatives, or persons who made nominations. Downs is none of these. At the time he sent the email, Downs was a city employee who was not assigned any election duties.

Downs also points to Utah Code § 78A-5-102(1), (2), and (7), and §§ 78B-6-401 to 412, but none of these sections grant a district court jurisdiction to review the decision of a county body. Section 78A-5-102(1) addresses civil and criminal matters, not review of a county

4

decision. Section 78A-5-102(2) addresses extraordinary writs, which Downs has not requested in this case. Section 78A-5-102(7) grants jurisdiction to review city municipal proceedings, not county decisions. The Declaratory Judgment Act, §§ 78B-6-401 to 412 also does not grant jurisdiction to review county decisions because the Act authorizes a court to issue declaratory judgments within the jurisdictional bounds set by statute and is not an independent basis for jurisdiction. Further, it appears the Utah Administrative Procedures Act (UAPA) also does not apply because it expressly excludes political subdivisions of the state, which a county is.

Utah County Code § 31-1-5 purports to allow an appeal to a district court, but counties do not have the authority to grant a state court jurisdiction that the court otherwise would not have. A county's power is limited by statute to an enumerated list of powers. *See* Utah Code § 17-50-302.

At the hearing on the motions, Downs acknowledged that he does not know whether there is a basis for jurisdiction to challenge the decision in district court, however, he argued that he is not aware of an alternative forum to challenge the Commissioners' decision.

**2) Does the term "ballot proposition" as used in Utah Code Section 20A-11-1205(1) include a referendum during the period of time before its sponsors have obtained the requisite number of signatures on the referendum petition?**

At the time Downs sent the email allegedly advocating against the ballot proposition, the sponsors of the referendum had not yet obtained the requisite number of signatures. When seeking to "undo" an action by a city or county board or council, the sponsors must file an application to challenge the action within five-days of when the local law or ordinance was passed. Utah Code Ann. § 20A-7-601(4)(a). The application must have at least five sponsors, who must be Utah voters who voted in a regular general election in Utah in the last three years. Utah Code Ann. §20A-7-602. After the application is filed, the clerk has five days to give the

sponsoring voters copies of the referendum petition and signature sheets that the voters can copy and circulate to gather signatures of other voters. *Id*. at § 20A-7-604.

After gathering sufficient signatures from registered voters, the sponsors deliver the referendum packet of signatures to the county clerk, who has fifteen days to check the names, confirm that those who signed their approval are registered voters, and deliver the referendum packets to the city clerk or recorder. *Id*. §§ 20A-7-606, 20A-7-606.3. The city clerk has fifteen days to count the number of certified signatures and mark the petition "sufficient" if the required number of voters approved the petition. If there are a sufficient number of signatures, the petition is "qualified" to be added to the official ballot. *Id*. § 20A-7-607.

It is only at this final stage of the process – that the petition has been issued, completed, and returned – that officials are allowed to evaluate whether or not the referendum is "legislative," as authorized by the constitution. *Taylor v. S. Jordan City Recorder*, 972 P.2d 423, 424 (Utah 1998).

Because Downs was the first person to be fined pursuant to Utah Code Section 20A-11-1205, Utah courts have not decided whether a fine may be imposed for advocating against a ballot proposition before the sponsors have gathered the requisite number of signatures to qualify for the ballot.

3) **Does the term "ballot proposition" as used in Utah Code Section 20A-11-1205(1) include a referendum during the signature gathering phase if the challenged local government action is later found to be administrative in nature and therefore not subject to a referendum?**

After the sponsors received the required number of signatures they filed a petition in the Fourth Judicial District for Utah County, Civil No. 160401698, seeking an order compelling the Orem City Recorder to accept the Referendum Petition for the November 2017 municipal general election. On May 2, 2017, the Utah State trial court in a suit between entities not party to

this suit, noting that the question presented "a difficult and close case," concluded that the BRT Referendum was administrative in nature and therefore not properly subject to the referendum process.

Downs argues that he did not violate Utah Code Section 20A-11-1205 because the referendum could never have qualified for the ballot because it involved a matter that was administrative in nature. Thompson argues that Utah Code Section 20A-11-1205 was designed to protect the ballot initiative process and applies even if a referendum never qualifies for the ballot. Thompson argues that Section 20A-11-1205 should protect the entire process because it is only after the petition has been issued, completed, and returned that officials [can] evaluate whether or not the referendum is "legislative," as authorized by the constitution. *Taylor v. S. Jordan City Recorder*, 972 P.2d 423, 424 (Utah 1998).

Because Downs was the first person to be fined pursuant to Utah Code Section 20A-11-1205, Utah courts have not decided whether a government employee may violate the statute when the referendum could never have qualified for the ballot in the first place.

## STANDARD FOR CERTIFICATION

Rule 41(a) of the Utah Rules of Appellate Procedure provides that "the Utah Supreme Court may answer a question of Utah law certified to it by a court of the United States when requested to do so by such certifying court . . . if the state of the law of Utah applicable to a proceeding before the certifying court is uncertain." Utah R. App. P. 41(a). The certification order must state the "question of law to be answered," "that the question certified is a controlling issue of law in a proceeding pending before the certifying court," and "that there appears to be no controlling Utah law." *Id.* 41(c). Courts have found that certification is appropriate "when the case concerns a matter of vital public concern, where the issue will likely recur in other cases,

where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *State Farm Mut. Auto Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001). A court should consider whether certification of the issue "would further the interest of comity and federalism by giving the Utah Supreme Court an opportunity to answer it in the first instance should it elect to do so under Utah R. App. P. 41." *See Ohio Cas. Ins. v. Unigard Ins. Co.*, 2009 WL 1160297 at *5 (10th Cir. April 28, 2009).

Because this is the first time a fine has been levied pursuant to Utah Code Section 20A-11-1205, the parties raised intricate issues involving Utah State law where no controlling authority exists.

## CONCLUSION

Based on the above reasoning, the court requests the Utah Supreme Court to answer the above certified questions, if it elects to do so. As a result of the court's determination to certify these questions to the Utah Supreme Court, the court stays its ruling on the Motions for Summary Judgment. (Dkt. Nos. 23, 37).

Pursuant to Rule 41(d) of the Utah Rules of Appellate Procedure, the Clerk of Court shall transmit a copy of this certification order, under this court's official seal, to the Utah Supreme Court. The Clerk of Court shall also certify a copy of any portion of the record in this case as may be directed by the Utah Supreme Court.

Dated this 28th day of August, 2018.

BY THE COURT:

DALE A. KIMBALL,
United States District Judge