# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN DOWNS, Assistant to the Orem City Manager,<br><br>Petitioner,<br><br>v.<br><br>BRYAN THOMPSON, Utah County Clerk/Auditor, the BOARD OF COUNTY COMMISSIONERS OF UTAH COUNTY, and UTAH COUNTY, a political subdivision of the State of Utah,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-00330-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on the parties' supplemental briefing regarding the Utah Supreme Court's recent opinion answering questions certified by this court. The court has reviewed the parties' supplemental briefing. Based on that briefing, and considering the law and facts related to this case, the court issues the following Memorandum Decision and Order.

## FACTUAL BACKGROUND

Pursuant to Utah Code Section 20A-11-1205(1)(b), "a person may not send an email using the email of a public entity to advocate for or against a ballot proposition." "The applicable election officer shall impose a civil fine against a person who violates [the statute] up to $250 for a first violation." *Id*.

Petitioner Steven Downs ("Downs") resides in Orem, Utah and is employed as the Assistant to the Orem City Manager. Downs has been employed in this capacity since March 3, 2014. On April 26, 2016, the Orem City Council passed Orem City Resolution R2016-0012 (the "Resolution") authorizing the Orem Mayor to sign two agreements. The first agreement was a

lease agreement with the Utah Transit Authority ("UTA") in which the city agreed to lease a strip of 400 West Street approximately 10 feet wide and 205 feet long for a dedicated Bus Rapid Transit lane (the "BRT Project"). The second agreement was an inter-local agreement with Provo, UDOT, UTA, and Mountainland Association of Governments in which the parties created a project management committee and an executive committee which were authorized to make decisions regarding the BRT Project.

On April 27, 2016, several individuals (the "Referendum Petitioners") filed a referendum petition application with the Orem City Recorder. The referendum petition (the "BRT Referendum") challenged the Resolution and sought voter approval to place issues related to the Resolution on the ballot during the next election.

On May 16, 2016, Downs sent an email in which he invited Orem delegates to attend a meeting in opposition to the BRT Referendum and specifically invited them to attend a meeting which had been scheduled to provide positive information regarding the BRT Project.

On May 31, 2016, Respondent Utah County Clerk/Auditor Bryan Thompson notified Downs that residents filed a complaint with the Utah Lt. Governor's Office alleging that Orem City personnel used a city email to influence the outcome of the BRT Referendum. The letter from Thompson further informed Downs that his email violated the Political Activities of Public Entities Act ("PAPEA") because it was sent from an Orem City email account and "advocated" against the current referendum process associated with the proposed BRT Project. The letter informed Downs that Thompson had assessed a $250 fine against him for a first infraction under Utah Code Section 20A-11-1205(2)(a).

On July 21, 2016, the Orem City Recorder denied the BRT Referendum because it concerned an administrative matter that was not subject to a referendum. The denial included a

letter from the Orem City Attorney stating that the BRT Referendum was not referable because the Resolution passed by the City was not a law, but an administrative act, and administrative acts are not referable.

On June 28, 2016, the Orem Deputy Attorney Steven C. Earl ("Deputy Attorney Earl") sent a letter to Thompson in which he requested a hearing to appeal the fine assessed against Downs. On September 6, 2016, the Board of Utah County Commissioners (the "Board") established an official appeal process for any person upon whom the Utah County Clerk/Auditor imposes a fine pursuant to Utah Code Section 20A-11-1205. On December 13, 2016, the Board held a hearing to determine the validity of the civil fine assessed against Downs under PAPEA. At the hearing, Deputy Attorney Earl made arguments against the fine. Additionally, prior to any hearing, he had submitted a detailed brief of legal arguments and authorities against the fine to the Board.

Following a closed meeting, the Board reconvened its regular meeting and announced its decision that the BRT Referendum constituted a "ballot proposition" and to uphold the fine assessed against Downs. Two Commissioners voted to uphold the fine while one voted against upholding the fine. Specifically, the Board found that Downs' email "advocated" against the BRT Referendum because it contained only information from opponents of the BRT Referendum, invited recipients to attend a meeting held by the opponents of the BRT Referendum, distributed a link to the anti-Petition "knowbeforeyousign.com" website with the heading "PROVO CITIZEN GROUP ADVOCATES FOR BRT," did not contain any information summarizing arguments in favor of the BRT Referendum, and did not grant equal access to proponents of the BRT Referendum.

On November 7, 2016, the Referendum Petitioners filed a petition in the Fourth Judicial District for Utah County, Civil No. 160401698, seeking an order compelling the Orem City Recorder to accept the BRT Referendum for the November 2017 municipal general election. On May 2, 2017, the Utah State trial court in a suit between entities not party to this suit, noting that the question presented "a difficult and close case," concluded that the BRT Referendum was administrative in nature and therefore not properly subject to the referendum process.

**PROCEDURAL BACKGROUND**

Downs initiated the instant suit in Utah state court on January 19, 2017, and Respondents timely removed the case to this court. In his complaint, Downs raises six causes of action: (1) an appeal of the decision rendered by the Board; (2) a declaratory judgment that there was no "ballot proposition" at the time of the alleged violation because the BRT Referendum concerned an administrative action for which no referendum was legally available; (3) a declaratory judgment that there was no "ballot proposition" at the time of the alleged violation because the BRT Referendum had not qualified for the ballot; (4) a declaratory judgment that his email did not "advocate" against a "ballot proposition"; (5) a declaratory judgment that Utah Code Section 20A-11-1205 is void for vagueness both facially and as applied; and (6) violation of his due process rights.

On March 7, 2018, Respondents filed a motion for summary judgment to dismiss each of Downs' claims. On May 24, 2018, Downs filed a motion for partial summary judgment on his First, Second, Third, and Sixth Causes of Action. The court held a hearing on the motions on August 1, 2018. At the hearing, the parties noted that this was the first time that a fine had been levied against an individual pursuant to Utah Code Section 20A-11-1205 and so raised new, intricate issues under Utah state law. Given that there was no controlling Utah law on those

issues, the court certified three questions to the Utah Supreme Court in order to assist in resolving the motions. Those questions were:

1) Does a Utah district court have jurisdiction to review the Utah County Board of Commissioners' decision upholding a fine levied pursuant to Utah Code Section 20A-11-1205?
2) Does the term "ballot proposition" as used in Utah Code Section 20A-11-1205(1) include a referendum during the period of time before its sponsors have obtained the requisite number of signatures on the referendum petition?
3) Does the term "ballot proposition" as used in Utah Code Section 20A-11-1205(1) include a referendum during the signature gathering phase if the challenged local government action is later found to be administrative in nature and therefore not subject to a referendum?

The Utah Supreme Court recently issued its opinion (the "Opinion") regarding the above questions. In the Opinion, the Utah Supreme Court answered the certified questions in the following manner:

> With respect to question one, we answer that a Utah state district court does not have appellate jurisdiction to review the Utah County Board of Commissioners' decision upholding a fine levied under Utah Code section 20A-11-1205. . . .
>
> We answer the second question by defining a "ballot proposition" as used in Utah Code section 20A-11-1205(1)(b) to encompass the entirety of the referendum process, including the period of time before sponsors have obtained the requisite number of signatures on the referendum petition.
>
> Lastly, in response to the third question, we answer that a "ballot proposition" as used in Utah Code section 20A-11-1205(1)(b) encompasses the entirety of the referendum process—including the signature gathering phase—even if the challenged local government action is later found to be administrative in nature and therefore ultimately not subject to a referendum.

*Downs v. Thompson*, 2019 UT 63, ¶¶ 2–4. In light of the Utah Supreme Court's answers, the court directed the parties to file supplemental briefing discussing the effects of the Opinion on Downs' claims.

## DISCUSSION

The parties largely agree as to how the Opinion affects Downs' claims. First, they both agree that the Opinion resolves Downs' first, second, and third claims and so should be dismissed because this court lacks appellate jurisdiction to review the Board's decision and there was a "ballot proposition" at the time of the alleged violation. Second, the parties agree that the Opinion did not resolve Downs' fifth and sixth claims. Accordingly, the parties suggest that they withdraw their pending motions for summary judgment and engage in new briefing focused solely on Downs' remaining claims. The court concurs with the parties on these points.

As for Downs' fourth claim, the parties are not in agreement. As stated above, Downs' fourth claim seeks a declaratory judgment that his email did not "advocate" against a "ballot proposition." Respondents contend that the Opinion resolves this claim, and it should be dismissed. They argue that Downs is essentially asking the court to review and reverse the Board's decision that Downs "advocated" in the email, but those are actions the court cannot take because the court lacks appellate jurisdiction. They further contend that the request for declaratory judgment cannot be divorced from the Board's decision itself because the Board's decision is the only reason why Downs filed this claim.

Conversely, Downs avers that the Opinion has no bearing on his fourth claim. First, Downs points out that this issue was not included in the certified questions submitted to the Utah Supreme Court. Second, Downs argues that his fourth claim does not discuss the Board's decision, but only mentions the contents of the email, and why it did not "advocate" against a "ballot proposition." Third, Downs contends that his fourth claim is not attempting to revise or correct the Board's decision, but instead, simply seeks a judicial declaration to resolve a legal uncertainty between the parties.

After reviewing the parties' arguments, the court concludes that Downs' fourth claim must be dismissed. The court agrees with Respondents' characterization of the fourth claim in that it cannot be divorced from the Board's decision. For the court to consider whether Downs' email "advocated" against a "ballot proposition," it would necessarily be required to review the Board's decision, which it cannot do. And even if the court considered and rendered a decision on the fourth claim, that decision would be meaningless and have no effect on the rights of the parties because the court has no power to review or overturn the Board's decision. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").[1] Accordingly, the court concludes that Downs' fourth claim must be dismissed.

## CONCLUSION

Based on the foregoing reasoning, Downs' First, Second, Third, and Fourth Causes of Action are hereby dismissed. The court directs the parties to file new motions focused solely on Downs' Fifth and Sixth Causes of Action on or before January 24, 2020. Once the parties have filed their new motions, they are to follow the ordinary filing times and length requirements contained in the local rules. In addition, per the parties' agreement, the court hereby terms the pending motions for summary judgment [ECF Nos. 23 and 37].[2]

---

[1] More on this point, the Tenth Circuit has opined that "[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011). Here, a decision on the fourth claim would neither settle Downs' dispute nor affect the behavior of Respondents toward him because such a decision would effectuate no change to the Board's determination that Downs' email "advocated" against a "ballot proposition."

[2] Because this Memorandum Decision and Order terms the pending motions for summary judgment, the parties need not go through the added time and expense of withdrawing them.

7

Dated this 13th day of December, 2019.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge