IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN DOWNS, Assistant to the Orem City Manager,<br><br>**Plaintiff,**<br><br>v.<br><br>BRYAN THOMPSON, Utah County Clerk/Auditor; the BOARD OF COUNTY COMMISSIONERS OF UTAH COUNTY; and UTAH COUNTY, a political subdivision of the State of Utah,<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-00330-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff's Revised Motion for Partial Summary Judgment [ECF No. 79] and Defendants' Motion for Summary Judgment [ECF No. 78]. On August 11, 2020, the court held oral argument on the motions via Zoom. Plaintiff was represented by Brady J. Brammer and Steven C. Earl, and Defendants were represented by Benson L. Hathaway and Ryan R. Beckstrom. The court took the matters under advisement. The court considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order.

**FACTUAL BACKGROUND**

Plaintiff Steven Downs resides in Orem, Utah and is employed as the Assistant to the Orem City Manager. Downs has been employed in this capacity since March 3, 2014. On April 26, 2016, the Orem City Council passed Orem City Resolution R2016-0012 (the "Resolution")

authorizing the Orem Mayor to sign two agreements.  The first agreement was a lease agreement with the Utah Transit Authority ("UTA") in which the city agreed to lease a strip of 400 West Street approximately 10 feet wide and 205 feet long for a dedicated Bus Rapid Transit lane (the "BRT Project").  The second agreement was an inter-local agreement with Provo, UDOT, UTA, and Mountainland Association of Governments in which the parties created a project management committee and an executive committee which were authorized to make decisions regarding the BRT Project.

On April 27, 2016, several individuals (the "Referendum Petitioners") filed a referendum petition application with the Orem City Recorder.  The referendum petition (the "BRT Referendum") challenged the Resolution and sought voter approval to place issues related to the Resolution, including the lease agreement, on the ballot during the next election.

On May 16, 2016, Downs sent an email in which he invited Orem delegates to attend a meeting in opposition to the BRT Referendum.  Later that month, Defendant Utah County Clerk/Auditor Bryan E. Thompson ("Thompson") notified Downs that residents filed a complaint with the Utah Lieutenant Governor's Office alleging that Orem City personnel used a city email to influence the outcome of the BRT Referendum.  The complaint cited the Political Activities of Public Entities Act ("PAPEA"), Utah Code Ann. § 20A-11-1205(1)(b) (2016), which provided that "a person may not send an email using the email of a public entity for a political purpose or to advocate for or against a ballot proposition. . . . The applicable election officer shall impose a civil fine against a person who violates [the statute] . . . up to $250 for a first violation." *Id*. § 20A-11-1205(3).  The letter from Thompson further informed Downs that his email violated PAPEA because it was sent from an Orem City email account and "advocated" against the current referendum process associated with the proposed BRT Project.

The letter informed Downs that Thompson had assessed a $250 fine against him for a first infraction under Utah Code Section 20A-11-1205(2)(a).

On July 21, 2016, the Orem City Recorder denied the BRT Referendum because it concerned an administrative matter that was not subject to a referendum. The denial included a letter from the Orem City Attorney stating that the BRT Referendum was not referable because the Resolution passed by the City was not a law, but an administrative act, and administrative acts are not referable.

On June 28, 2016, the Orem Deputy Attorney Steven C. Earl ("Deputy Attorney Earl") sent a letter to Thompson in which he requested a hearing to appeal the fine assessed against Downs. On September 6, 2016, the Board of Utah County Commissioners (the "Board") established an official appeal process for any person upon whom the Utah County Clerk/Auditor imposes a fine pursuant to Utah Code Section 20A-11-1205. On December 13, 2016, the Board held a hearing to determine the validity of the civil fine assessed against Downs. At the hearing, Deputy Attorney Earl made arguments against the fine. Additionally, prior to the hearing, he had submitted a detailed brief of legal arguments and authorities against the fine to the Board.

Following a closed meeting, the Board reconvened its regular meeting and announced its decision that the BRT Referendum constituted a "ballot proposition" and to uphold the fine assessed against Downs. Two Commissioners voted to uphold the fine while one voted against upholding the fine. Specifically, the Board found that Downs' email "advocated" against the BRT Referendum because it contained only information from opponents of the BRT Referendum, invited recipients to attend a meeting held by the opponents of the BRT Referendum, distributed a link to the anti-Petition "knowbeforeyousign.com" website with the heading "PROVO CITIZEN GROUP ADVOCATES FOR BRT," did not contain any

3

information summarizing arguments in favor of the BRT Referendum, and did not grant equal access to proponents of the BRT Referendum. Several months after the Board's decision, Utah County received an anonymous payment of $250 with a note indicating that the payment was meant to be applied to the fee assessed against Downs.

On November 7, 2016, the Referendum Petitioners filed a petition in the Fourth Judicial District for Utah County, Civil No. 160401698, seeking an order compelling the Orem City Recorder to accept the BRT Referendum for the November 2017 municipal general election. On May 2, 2017, the Utah State trial court in a suit between entities not party to this suit, noting that the question presented "a difficult and close case," concluded that the BRT Referendum was administrative in nature and therefore not properly subject to the referendum process.

## PROCEDURAL BACKGROUND

Downs initiated the instant suit in Utah state court on January 19, 2017, and Respondents timely removed the case to this court. In his complaint, Downs raises six causes of action: (1) an appeal of the decision rendered by the Board; (2) a declaratory judgment that there was no "ballot proposition" at the time of the alleged violation because the BRT Referendum concerned an administrative action for which no referendum was legally available; (3) a declaratory judgment that there was no "ballot proposition" at the time of the alleged violation because the BRT Referendum had not qualified for the ballot; (4) a declaratory judgment that his email did not "advocate" against a "ballot proposition"; (5) a declaratory judgment that Utah Code Section 20A-11-1205 is void for vagueness both facially and as applied; and (6) violation of his due process rights.

On March 7, 2018, Defendants filed a motion for summary judgment to dismiss each of Downs' claims. On May 24, 2018, Downs filed a motion for partial summary judgment on his

4

First, Second, Third, and Sixth Causes of Action. The court held a hearing on the motions on August 1, 2018. At the hearing, the parties noted that this was the first time that a fine had been levied against an individual pursuant to Utah Code Section 20A-11-1205 and so raised new, intricate issues under Utah state law. Given that there was no controlling Utah law on those issues, the court certified three questions to the Utah Supreme Court in order to assist in resolving the motions. Those questions were:

1) Does a Utah district court have jurisdiction to review the Utah County Board of Commissioners' decision upholding a fine levied pursuant to Utah Code Section 20A-11-1205?

2) Does the term "ballot proposition" as used in Utah Code Section 20A-11-1205(1) include a referendum during the period of time before its sponsors have obtained the requisite number of signatures on the referendum petition?

3) Does the term "ballot proposition" as used in Utah Code Section 20A-11-1205(1) include a referendum during the signature gathering phase if the challenged local government action is later found to be administrative in nature and therefore not subject to a referendum?

In the fall of 2019, the Utah Supreme Court issued its opinion (the "Opinion") regarding the above questions. In the Opinion, the Utah Supreme Court answered the certified questions in the following manner:

> With respect to question one, we answer that a Utah state district court does not have appellate jurisdiction to review the Utah County Board of Commissioners' decision upholding a fine levied under Utah Code section 20A-11-1205. . . .
>
> We answer the second question by defining a "ballot proposition" as used in Utah Code section 20A-11-1205(1)(b) to encompass the entirety of the referendum process, including the period of time before sponsors have obtained the requisite number of signatures on the referendum petition.
>
> Lastly, in response to the third question, we answer that a "ballot proposition" as used in Utah Code section 20A-11-1205(1)(b) encompasses the entirety of the referendum process—including the signature gathering phase—even if the challenged local government action is later found to be administrative in nature and therefore ultimately not subject to a referendum.

*Downs v. Thompson*, 2019 UT 63, ¶¶ 2–4, 452 P.3d 1101, 1106.  In light of the Utah Supreme Court's answers, the court directed the parties to file supplemental briefing discussing the effects of the Opinion on Downs' claims.  Following the supplemental briefing, the court granted summary judgment in favor of Defendants on Downs' First, Second, Third, and Fourth Causes of Action.  In addition, the court directed the parties to file new motions for summary judgment focused solely on the two remaining claims.

## DISCUSSION

The parties now move for summary judgment on Downs' remaining claims: constitutional vagueness and due process violations.[1]  "Summary judgment is appropriate if the movant 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores*, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citation omitted).  In applying this standard, the court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (quoting *Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012)).  Accordingly, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," the movant's motion must be denied.  *Roberts*, 884 F.3d at 972 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[1] While Defendants move for summary judgment on Downs' procedural and substantive due process claims, Downs only moves for summary judgment on his procedural due process claim.

6

### I. Vagueness Claim

"As a basic matter of due process, a law is 'void for vagueness' if it does not clearly define its prohibitions." *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1157 (10th Cir. 2006) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). The void-for-vagueness doctrine serves "to put the public on notice of what conduct is prohibited" in addition to "guard[ing] against arbitrary enforcement." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1179 (10th Cir. 2009). A statute is therefore impermissibly vague and void if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

A plaintiff can challenge the validity of a statute by arguing that the statute is void for vagueness either facially or as applied. *See Ward v. Utah*, 398 F.3d 1239, 1246–47 (10th Cir. 2005). "Facial challenges are strong medicine." *Id.* at 1246. Indeed, the Supreme Court has articulated that "facial challenges are best when infrequent." *Sabri v. United States*, 541 U.S. 600, 608 (2004). Accordingly, for a plaintiff to be successful on a facial challenge, he or she "must show, at a minimum, that the challenged law would be vague in the vast majority of its applications; that is, that 'vagueness permeates the text of [the] law.'" *Doctor John's*, 465 F.3d at 1157 (alteration in original) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999)). Regarding as-applied challenges, courts conduct their analysis by "consider[ing] th[e] statute in light of the charged conduct." *United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009); *see Galbreath v. City of Oklahoma City*, 568 F. App'x 534, 539 (10th Cir. 2014) ("For an as-applied vagueness challenge, we must tether our analysis to the factual context in which the ordinance was applied.").

In this case, Downs contends that Utah Code Section 20A-11-1205 is void for vagueness both facially and as applied to him. Specifically, Downs asserts that the terms "advocate" and "ballot proposition," as used in the statute, are impermissibly vague because they are not clearly defined and are subject to varying interpretations. Moreover, he avers that those terms render the statute so vague that persons of ordinary intelligence could not be sure as to what conduct was prohibited under the statute. Downs therefore requests that the court enter a declaratory judgment voiding the statute for being unconstitutionally vague.

The court, however, concludes that it need not decide whether Utah Code Section 20A-11-1205 was unconstitutionally vague at the time Downs' sent the email that resulted in this dispute because the statute has since been amended. After this case was filed, the Utah State Legislature made several amendments to Section 20A-11-1205, which now reads, in relevant part:

> (1) Except as provided in Subsection (5), a person may not send an email using the email of a public entity:
>
>   (a) for a political purpose;
>
>   (b) to advocate for or against a proposed initiative, initiative, proposed referendum, referendum, a proposed bond, a bond, or any ballot proposition; or
>
>   (c) to solicit a campaign contribution.

Utah Code Ann. § 20A-11-1205(1) (2020). Importantly, the term "proposed referendum" is now defined as "a referendum proposed in an application." *Id.* § 20A-11-1202(13). In light of the Utah State Legislature's actions in amending this statute, the court finds Downs' vagueness claim to be without merit because the court cannot issue a declaratory judgment voiding the prior version of a statute that has since been superseded. *See Kansas Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009) ("Generally, repeal of a challenged statute causes a case to

8

become moot because it extinguishes the plaintiff's legally cognizable interest in the outcome, rendering any remedial action by the court ineffectual."); *Nat'l Advert. Co. v. City & Cty. of Denver*, 912 F.2d 405, 412 (10th Cir. 1990) ("A declaratory judgment on the validity of a repealed ordinance is a textbook example of advising what the law would be upon a hypothetical state of facts.") (internal quotation marks omitted); *see also Matter of Bunker Ltd. P'ship*, 820 F.2d 308, 311 (9th Cir. 1987) ("Where intervening legislation has settled a controversy involving only injunctive or declaratory relief, the controversy has become moot."). If the court issued a declaratory judgment, such an order would amount to nothing more than an advisory opinion, and, as is well established, federal courts lack "the power to render advisory opinions." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

As this court has previously pointed out in this case, "[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of *the defendant toward the plaintiff*." Mem. Decision and Order, ECF No. 73, at 7 n.1 (quoting *Jordan*, 654 F.3d at 1025) (alternations in original). Because the Utah State Legislature amended Section 20A-11-1205 between the time Downs filed his complaint and now, a judicial declaration from this court voiding the prior version of Section 20A-11-1205 would have no effect on Downs' rights or any of the rights of the parties in this case. *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."); *see also Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) ("[P]arties have no legally cognizable interest in the constitutional validity of an obsolete

9

statute."). In other words, a declaration of unconstitutionality . . . directed against the objectionable features of the [prior version of § 20A-11-1205] would serve no purpose today." *Khodara Envtl., Inc. ex rel. Eagle Envtl. L.P. v. Beckman*, 237 F.3d 186, 194 (3d Cir. 2001); *see Daskalea v. Washington Humane Soc'y*, 710 F. Supp. 2d 32, 41 (D.D.C. 2010) ("In this case, a declaration that the now-obsolete provisions of the Act are facially unconstitutional would serve no purpose today."). The court therefore concludes that judgment in favor of Defendants as to Downs' void-for-vagueness claim is warranted. Accordingly, the court grants Defendants' motion and denies Downs' motion on that claim.

## II.     Due Process Claim

Before addressing the substance of Downs' due process claim, the court first notes that there are deficiencies in Downs' complaint with respect to that claim. In the Complaint, Downs asserts his due process claim against the Defendants directly under the Fourteenth Amendment.[2] However, "direct actions under the Constitution against state officials are not appropriate." *Bauchman By & Through Bauchman v. W. High Sch.*, 900 F. Supp. 254, 263 (D. Utah 1995), *aff'd sub nom. Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542 (10th Cir. 1997). Rather, such actions must be brought pursuant to 42 U.S.C § 1983. *Id.* ("By enacting 42 U.S.C. § 1983, 'Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective.'" (quoting *Carlson v. Green*, 446 U.S. 14, 18–19 (1980))); *see Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C.

---

[2] Downs also brings his due process claim under Article I, § 7 of the Utah Constitution. The parties, however, focus their briefing exclusively on the Fourteenth Amendment. As such, the court will direct its analysis in the same manner.

10

§ 1983."); *Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423, 434 (D. Mass. 2013), *aff'd* (Dec. 16, 2014) ("There is no direct cause of action by an individual for a constitutional violation; rather, such a claim must be brought under 42 U.S.C. § 1983."); *Demack v. Office of Attorney Gen. of New Mexico*, No. CV 10-00288 KBM/WDS, 2011 WL 13285701, at *2 (D.N.M. May 23, 2011) ("Where relief is available under § 1983, a majority of courts refuse to allow actions directly under the Constitution."). And as evidenced by the Complaint, Downs does not mention Section 1983, let alone assert his claim thereunder.

What further compounds this issue is the fact that, during oral argument, Downs' counsel conveyed that Downs is seeking monetary damages for the alleged violations of his due process rights. Yet, the vehicle by which a plaintiff is able to obtain monetary damages against a state actor as the result of an alleged constitutional violation is Section 1983. *See* 42 U.S.C. § 1983. But, again, Downs failed to bring his claim pursuant to that statute. Furthermore, in Downs' complaint, in the section entitled "Prayer for Relief," Downs makes no mention of monetary damages. Instead, in relation to his due process claim, his complaint requests "judgment that the fine assessed against Petitioner Steven Downs by [Defendants] under Utah Code Section 20A-11-1205 and the appeal hearing conducted by the [Board] violated the due process rights of Steven Downs and are therefore void." Compl. ECF No. 2-2 at 19. While the next sentence in the complaint makes a catch-all request for any "other and further relief as the Court deems appropriate," it is notable that Downs' failed to specifically request monetary damages in his complaint. *Id.* While the foregoing deficiencies may well be fatal to Downs' due process claim, the court will nevertheless proceed and address the claim on its merits, construing it as though Downs had properly asserted it in the Complaint.

### A. Substantive Due Process

Downs contends that Defendants' actions violated his substantive due process rights. "Claims for 'substantive due process' find their basis in the Fourteenth Amendment's protections against arbitrary government power." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019). "Substantive due process protects fundamental liberty interests and protects against the exercise of government authority that 'shocks the conscience.'" *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013) (quoting *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008)). Claims for violations of substantive due process arise in two ways: "(1) legislative acts that infringe on a fundamental right, or (2) official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience." *Lindsey*, 918 F.3d at 1115. Under the fundamental rights standard, substantive due process protections are "accorded primarily 'to matters relating to marriage, family, procreation, and the right to bodily integrity,'" *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008). Thus, given that the rights at issue here bear no relation to such rights, the court finds that Downs' claim implicates the second standard—official conduct that is conscience-shocking.[3]

Under the conscience-shocking vein of substantive due process doctrine, "[o]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lindsey*, 918 F.3d at 1116. Indeed, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006). Rather, a plaintiff must meet the "exacting" standard, *Lindsey*, 918 F.3d at 1116, of demonstrating that government officials

---

[3] Notably, Downs fails to differentiate his claim as being a fundamental-rights claim or a conscience-shocking claim.

"abus[ed] their power, or employ[ed] it as an instrument of oppression." *Seegmiller*, 528 F.3d at 767.

In this case, Downs contends that Defendants violated his substantive due process rights by failing to provide him with a fair and impartial hearing. The court, however, finds this argument to be unavailing because whether there was a fair and impartial hearing is "procedural due process topic, rather than a substantive one." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 527–28 (10th Cir. 1998); *see Artistic Entm't, Inc. v. City of Warner Robins*, 134 F. App'x 306, 309 (11th Cir. 2005) ("Furthermore, to the extent [the plaintiff] argues its substantive due process rights were violated by the existence of a biased tribunal, such a claim is a procedural, not substantive, due process claim."); *Holloway v. Walker*, 784 F.2d 1287, 1294 (5th Cir. 1986) ("[A]n allegation of a biased tribunal [is] clearly a procedural due process complaint. . . . Nothing in [our] cases suggests that the issue of the impartiality of a tribunal could be matter of substantive due process."). Thus, Downs cannot rely on his allegations that Defendants deprived him of a fair and impartial hearing to support his substantive due process claim.

Downs also avers that Defendants violated his substantive due process rights by creating their own appeal process to determine the validity of the fine issued against him. He contends that because Section 20A-11-1205 is a state statute, Defendants lacked the authority and jurisdiction to create an appeal process. The court also finds this argument to be unpersuasive for several reasons. First, as Downs notes in his Complaint, Section 20A-11-1205 did not provide any appeal process for a fine imposed under that section, nor did any other section of Utah state law provide for such an appeal. As a result, Downs requested that Defendants provide him some form of hearing in order to challenge the fine levied against him. In response, the Board adopted Utah County Ordinance Sections 31-1-1 through 31-1-5 (the "Ordinance"), which

purported to establish an appeal process for fines imposed under Section 20A-11-1205. While the Board may have lacked the necessary authority to create such a process, the Board's actions demonstrate that it was attempting to give Downs the due process he so desired—not deprive him of it. This type of conduct, the court concludes, is not the type of conduct that is so egregious and conscience shocking so as to form the basis of a substantive due process claim. Indeed, the court finds no facts or allegations in this case that would meet or satisfy the conscience-shocking standard. The court therefore concludes that judgment in favor of Defendants is warranted with regard to Downs' substantive due process claim.

### B. Procedural Due Process

Downs also contends that Defendants violated his procedural due process rights because he claims that the hearing to challenge his fine was neither fair nor impartial. "A fundamental principle of procedural due process is a hearing before an impartial tribunal." *Tonkovich*, 159 F.3d at 518. "Impartiality may be affected by a 'personal or financial stake' in the outcome or 'personal animosity.'" *Cypert v. Indep. Sch. Dist. No. I-050 of Osage Cty.*, 661 F.3d 477, 481 (10th Cir. 2011) (quoting *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 491–92 (1976)). If a tribunal "is biased with respect to the factual issues to be decided at the hearing," then the tribunal is not impartial. *Tonkovich*, 159 F.3d at 518. However, an individual challenging the impartiality of a tribunal "must overcome a presumption of honesty and integrity in those serving as adjudicators." *Riggins v. Goodman*, 572 F.3d 1101, 1112 (10th Cir. 2009) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)); *see Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986) ("[H]onesty and integrity are presumed on the part of a tribunal."). In light of that presumption, a "substantial showing of personal bias is required to disqualify a hearing officer or tribunal." *Cypert*, 661 F.3d at 481; *Mangels*, 789 F.2d at 838 ("[T]here must

14

be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated.").

In analyzing whether a hearing was fair and conducted by impartial adjudicators, it is imperative to keep in mind that "due process is flexible and calls [only] for such procedural protections as the particular situation demands." *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1220 (10th Cir. 2006) (alteration in original). Indeed, "what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Stanley v. Illinois*, 405 U.S. 645, 650–51 (1972).

In this case, Downs advances four arguments in support of his procedural due process claim: (1) Commissioner Bill Lee ("Lee"), one of the three members of the Board that presided over the hearing, was not impartial and therefore tainted the Board's decision; (2) the Board violated Utah's Open and Public Meetings Act (the "Open Meetings Act"); (3) Defendants passed and enforced the Ordinance; and (4) Paul Jones ("Jones"), from the Utah County Attorney's Office, improperly acted as both a prosecutor and advisor in this case. The court will address each argument in turn.

Downs points to various pieces of evidence and makes several arguments in support of his claim that Lee was biased and had prejudged Downs' liability prior to the hearing. But the court is unpersuaded. First, nowhere in the evidence that Downs points to does Lee make any specific comments about Downs or the email that Downs sent. Rather, the evidence that Downs cites discusses Lee's political views and opinions regarding the BRT Project and BRT Referendum generally. Thus, Downs has failed to present evidence of Lee's alleged biased with respect to the specific factual issues that were considered by the Board at the hearing—namely,

whether Downs' actions violated Utah Code Section 20A-11-1205. Second, Lee was entitled to the legal and philosophical opinions that he held prior to the hearing, and Downs has failed to provide evidence demonstrating that such opinions tainted his ability to act as an impartial judge. That an adjudicator has formulated some opinion regarding the legality of a particular practice prior to taking part in a hearing does not establish that he or she is biased and incapable of rendering a fair and impartial judgment. *See Withrow*, 421 U.S. at 48–49 ("No decision of this Court would require us to hold that it would be a violation of procedural due process for a judge to sit in a case after he had expressed an opinion as to whether certain types of conduct were prohibited by law."). Third, not only has Downs failed to proffer evidence establishing that Lee was a biased decision-maker with respect to Downs, Downs has offered no evidence that Lee prejudged Downs' culpability prior to the hearing. Therefore, the court concludes that Downs has failed to make a substantial showing of Lee's alleged personal bias to overcome the presumption of honesty and integrity afforded to the Board.

Downs next alleges that the Board violated the Open Meetings Act. The intent behind the Open Meetings Act is that "the state, its agencies, and its political subdivisions . . . take their actions openly; and . . . conduct their deliberations openly." Utah Code Ann. § 52-4-102. Accordingly, the Open Meetings Act requires, among other things, that political subdivisions, like the Board, publicly notice the meeting agenda, time, and location of any meeting at least twenty-four hours in advance as well as preserve written minutes and recordings of all meetings. *Id.* § 52-4-202 through 203. Based on these provisions, Downs contends that the Board held two to four closed meetings to discuss the outcome of Downs' appeal hearing in this case in violation of the Open Meetings Act. Downs' contentions, however, are misplaced. Because the Open Meetings Act imposes statutory requirements, not constitutional requirements, it is irrelevant to

16

Downs' due process claim. *See Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007) ("[A] failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause."). The relevant procedural due process question raised in this case is "whether the level of process afforded to [Downs] passed constitutional muster, not whether [Defendants] followed statutes or regulations." *Id.*; *see* Revised Mot. for Partial Summ. J. ECF No. 79 at 18 (Downs alleging that he was deprived of "his *statutory right*" to observe the Board's actions—not his *constitutional right* (emphasis added)). And, in any event, as will be further explained below, the court finds that Defendants afforded Downs adequate due process.

Downs next contends that Defendants violated his due process rights by passing and enforcing the Ordinance. He avers that PAPEA provides for a complete review of any controversy by a state district court. Thus, by passing and enforcing the Ordinance, Downs argues that Defendants unlawfully usurped the roles of other branches of government and thereby violated his procedural due process rights. The court remains unmoved by this argument. Downs implies that because PAPEA provides for a review of controversies by state district courts, he could have properly challenged his fine in a state district court but for the passage of the Ordinance. Downs fails to appreciate, however, that he specifically requested a hearing before the Board to challenge his fine *instead* of taking his claim to court. Thus, in effect, Downs asserts that Defendants deprived him of his due process rights by taking the very actions that he requested that they take in order safeguard those rights. Certainly, under such circumstances, a governmental entity cannot be held to have provided an ineffective process by

17

giving a claimant the process that he or she so requested. Therefore, the court finds Downs' arguments related to the Ordinance to be meritless.[4]

Lastly, Downs contends that his procedural due process rights were violated because Jones improperly acted as both a prosecutor and advisor to the Board in this case. The Supreme Court has explained that procedural due process prohibits a former prosecutor from later being a judge in the same case. *See Williams v. Pennsylvania*, 136 S. Ct. 1899, 1906 (2016). In this case, Jones was the county attorney charged with advocating to uphold the fine against Downs. Downs contends that after advocating in favor of the fine, Jones then advised the Board on its ultimate decision upholding the fine. As with Downs' preceding arguments, the court is unpersuaded. In his deposition, Jones specifically testified that he purposefully did not speak with the members of the Board until after the Board had reached its determination. In addition, he testified that he did not attempt to influence the Board in any manner, and he ensured that there was separation between him and the Board. In light of this evidence, and bearing in mind the presumption of honesty and integrity with respect to the Board, the court finds that Downs has failed to raise a genuine issue of material fact with respect to Jones' conduct in order to support his due process claim.[5]

As a final matter, when considering the totality of the circumstances, the court concludes that Downs' received adequate due process. After Thompson issued the fine, Deputy Attorney

---

[4] Downs also raises the issue that the Ordinance essentially precludes any judicial review of the Board's decision. But that argument is beside the point. Downs specifically brought his procedural due process claim alleging that Defendants violated his rights by failing to provide him with a fair and impartial hearing. The fact that the decision rendered by the Board is unreviewable has no bearing on or relevance to whether Downs received adequate procedural due process when he requested and received a hearing before the Board.

[5] In any event, even if a prosecutor that was formerly involved in a case later prepares findings and conclusions in that case, that does not necessarily indicate a due process violation. *See In re Disciplinary Action of McCune*, 717 P.2d 701, 706 (Utah 1986), *abrogated on other grounds by Monson v. Carver*, 928 P.2d 1017 (Utah 1996) ("Bar counsel's preparation of findings, conclusions and recommendations in this case was no different than the preparation of similar documents by counsel for the prevailing party in district court proceedings.")

Earl sent a letter to Thompson asserting various objections as to why the fine was improper. In addition, Deputy Attorney Earl requested a hearing before the Board to contest the validity of the fine, and the Board granted that request. In preparation for the hearing, Downs submitted additional written arguments. Then, at the hearing, Downs was represented by counsel and had further opportunity to be heard. Considering that Defendants provided the foregoing procedure all with respect to a $250 civil fine, the court concludes that Defendants did not violate Downs' procedural due process rights.[6] Accordingly, the court grants judgment in favor of Defendants on Downs' procedural due process claim.

## CONCLUSION

Based on the foregoing reasoning, Plaintiff's Revised Motion for Partial Summary Judgment [ECF No. 79] is hereby DENIED, and Defendants' Motion for Summary Judgment [ECF No. 78] is hereby GRANTED in its entirety.

Dated this 24th day of August, 2020.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

---

[6] As stated above, Downs also alleges violations of his due process rights under Article I, § 7 of the Utah Constitution for which he seeks monetary damages. In order to recover monetary damages for alleged violations of the Utah Constitution, a plaintiff must first demonstrate that the "provision violated by the defendant is self-executing." *Wood v. Farmington City*, 910 F. Supp. 2d 1315, 1328 (D. Utah 2012) (quoting *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 48, 250 P.3d 465, 478). Then, the plaintiff must establish: "(1) the plaintiff 'suffered a flagrant violation of his or her constitutional rights;' (2) 'existing remedies do not redress his or her injuries;' and "(3) equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Id.* Because Downs has failed to establish that he suffered any violation of his constitutional rights as explained above, his claim under the Utah Constitution also fails.